UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALYCIA N. ADAMS, | ) | Case No. 1:04CV2325 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | |
| | ) | |
| SBC/AMERITECH, | ) | |
| | ) | |
| Defendant. | ) | <u>MEMORANDUM OF OPINION</u> |

On October 20, 2004, Alycia N. Adams ("Adams") filed a complaint in the Cuyahoga County Court of Common Pleas against SBC/Ameritech ("SBC") raising various employment discrimination claims based upon her disability, race, and gender, along with an intentional infliction of emotional distress ("IIED") claim.  (Doc. No. 1-2.)

On November 23, 2004, SBC filed a petition for removal on the basis of federal question and pendent jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, 1446.  (Doc. No. 1-1.)

On September 23, 2005, SBC filed a motion for summary judgment.  (Doc. No. 22-2.)  On December 7, 2005, Adams filed a brief in opposition.  (Doc. No. 38-1.)  On January 06, 2006, SBC filed a reply.  (Doc. No. 42-1.)

All issues have been fully briefed and are ripe for adjudication.  For the following reasons, SBC's motion for summary judgment (Doc. No. 22-2) is granted.

## I.    FACTUAL BACKGROUND

Adams is a resident of Cuyahoga County, Ohio and at all relevant times, was an employee at SBC.  (Doc. 1-2 "Compl.," at ¶3.)  SBC is a diversified communications company that provides its customers with a range of voice, data, networking, and e-business services.  (Doc. No. 22-2, at

1.)  It is authorized to conduct business in the state of Ohio, with a principle place of business in Cuyahoga County.  Compl., at ¶4.

On January 9, 1995, Adams began her employment with SBC as a customer service representative.  Id. at ¶9.  On September 10, 2003, she was placed on "final warning" status based on her poor attendance record.  (Doc. No. 22-5 "M. Adams Aff.," at ¶5; Doc. No. 33-5 "Azriel Depo." Ex. D, at 1005.)

On October 28, 2003, Adams was severely injured in an automobile accident.  Compl., at ¶10.  On November 12, 2003, she initiated a claim for short term disability ("STD") benefits with SBC's Medical Absence and Accommodation Resource Team ("SMAART").  (Doc. No. 22-4 "Adams Depo.," at 62 Ex. 6.)  On that same date, a letter was sent to her explaining that her STD benefits could not be approved until her treatment provider substantiated that her medical condition met the requisite criteria as defined in the SBC disability plan.  Id.  The letter further stated that "[i]t is critical that your physician demonstrates by his/her observations and clinical findings that you are unable to perform your work with or without accommodations."  Id.

On November 24, 2003, Adams contacted her treating physician, Amhed Elghanzawi, M.D., to complete the requisite SMAART forms.  Id. at 66 (Ex. 8.)  On November 26, 2003, he indicated that Adams suffered from a cervical and lumbar strain and that she would be unable to work from November 15, 2003 to December 15, 2003.  Id. at 71 (Ex. 10.)  On December 1, 2003, SMAART determined that Adams did not qualify for STD benefits because the objective medical data did not support a finding that she was unable to perform sedentary work.  (Azirel Depo. Ex. D at 1004.)  However, her leave under the Family Medical Leave Act ("FMLA") was approved from November 15, 2003 to December 15, 2003 because she did suffer from a "serious health condition."  Compl.,

-2-

at ¶11.  On December 3, 2003, she was notified that her STD claim was denied and informed of her appeal rights.  (Adams Depo., at 74, 79 Exs. 12-13.)

From December 15, 2003 to February 22, 2004, Adams did not submit any additional medical information to SMAART.  (Adams Depo., at 88-89.)  Accordingly, on February 16, 2004, she was informed by SBC that: (1) she was not authorized to take further leave; (2) if she believed that she was still eligible for FMLA leave, she should contact her manager; (3) if she believed her medical condition would warrant consideration of an accommodation, she should contact SMAART; and (4) she should report to work on February 18, 2004.  Id. at 117-19.  Adams testified that she left a voicemail on February 19, 2004 with her manager, Major Adams, but could not recall the substance of the message.  Id. at 119-21.  She claims that he never responded.  Id.  Because she learned that Adams planned to appeal her denial of STD benefits and because she still had eligible FMLA time available for 2004, he left her on the payroll.  (M. Adams Aff., at ¶6.)

On February 22, 2004, Adams appealed her denial of STD benefits.  (Doc. No. 38-3.)  She submitted a letter describing her medical conditions, a SMAART Quality Review Unit Appeal Form, and medical records documenting her condition.  Id.  Those records indicated that she had an L5 nerve denervation and was unable to return to work until May 24, 2004.  Id. at 9-11.  She also provided records indicating that she suffered from a major depressive disorder and post-traumatic stress as a result of her accident, which "interfere with her ability to work productively."  Id. at 19.

SMAART had two independent physicians, an orthopedic surgeon and a psychiatrist, review the file.  Both doctors concluded that Adams was not disabled and could perform sedentary work.  (Azriel Depo. Ex. D at 00995; Doc. No. 33-6 "Lasser Depo." Ex. I.)  The orthopedic surgeon concluded that "the medical information did not indicate loss of functionality of the cervical,

-3-

thoracic, or lumbosacral spine" and the psychiatrist concluded that "the clinical findings did not support an inability to perform job duties during the appeal/denial period." Id.  On March 26, 2004, Adams was informed that her appeal was denied.  Id.

On March 24, 2004, SBC informed Adams that her FMLA leave was canceled and that she would be terminated if she did not return to work by March 26, 2004.  Compl., at ¶13.  She did not report to work and her employment was accordingly terminated.  Id. at ¶14.

On June 16, 2004, Adams timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Id. at ¶17.  On July 20, 2004, the EEOC issued a right to sue letter.  Id. at ¶18.

On October 20, 2004, Adams timely filed the instant complaint raising various employment discrimination claims based upon her alleged disability, race, and gender, along with an IIED claim. She maintains that she was able to perform the essential functions of her employment with reasonable accommodations.  Id. at ¶15.  She further alleges that SBC has reasonably accommodated the disabilities of similarly situated male and white employees but intentionally refused to offer her similar accommodations because of her race and gender.  Id. at ¶16.  She seeks compensatory damages in an amount believed to be in excess of $25,000, punitive damages, and reasonable attorney fees and costs.  Id. at 5.

In its motion for summary judgment, SBC argues that Adams (1) was not disabled; (2) is unable to establish a prima facie case for race or gender discrimination; and (3) that her IIED claim lacks merit.  The court will address each issue in turn.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

## III.    LEGAL ANALYSIS

### A.    ADA Claim

Counts One and Three raise disability discrimination claims in violation of 42 U.S.C. § 12111, *et seq.* and O.R.C. § 4112.02. To prevail in a disability discrimination claim, a plaintiff must

-5-

present either direct evidence of discrimination or present a prima facie case.  Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ., 209 F.3d 931, 934 (6th Cir. 2000).  To establish a prima facie case under the Americans with Disabilities Act (the "ADA"), a plaintiff must show: (1) she is an individual with a disability; (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability.  Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (citing Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996)).  Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Martin, 209 F.3d at 934.  The burden then shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination.  Id. (Citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Federal and Ohio discrimination claims require the same analysis.  Id. at 934 n.2.

SBC only takes issue with the first element: whether Adams has established that she is an individual with a disability.  To be considered a person with a disability under the ADA, a plaintiff must (1) have a physical or mental impairment which "substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment.  42 U.S.C. § 12102(2).  According to the Supreme Court, the term "substantially" in the phrase "substantially limits" means "considerable" or "to a large degree."  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002).  The phrase "major life activity" refers to "activities that are of central importance to daily life."  Id. at 197.  Such activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  Mahon, 295 F.3d at 590 (citing 45 C.F.R § 84.3(j)(2)(ii)).  The Supreme Court has emphasized that

-6-

"these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."  Williams, 534 U.S. at 197.

The existence of a disability must be determined on a case-by-case basis.  Id. at 198.  In making such a determination, courts should consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.  Cotter v. Ajilon Servs., 287 F.3d 593, 597 (6th Cir. 2002) (citing 29 C.F.R. § 1630.2(j)(2)).  The Supreme Court has held that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial."  Williams, 534 U.S. at 198 (internal quotation omitted).  Generally, an impairment that "only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the Act."  Mahon, 295 F.3d at 590-91 (citing Williams, 534 U.S. at 198).

Here, Adams alleges that her L-5 nerve denervation and depressive disorders rendered her disabled.[1]  However, to the extent that those impairments prevented her from performing major life

---

[1]    Adams cites Dr. Fumich's affidavit, which was filed after the instant motion for summary judgment, for the proposition that she was disabled until August 10, 2004.  (Doc. No. 38-4.)  This statement however, contradicts her own deposition testimony, which indicates that as of May 24, 2004, she was able to return to work without any restrictions and could sit, walk, and care for herself without any difficulties whatsoever.  (Adams Depo., at 157-59; 177-80.)  She also cites Dr. Fumich's affidavit for the proposition that at the time of diagnosis, the length of disability could be "temporary or permanent.  (Doc. No. 38-4, ¶4.)  Again, this statement contradicts his own prior statement that Adams would only be "incapacitated" until May 24, 2004.  (Doc. 38-3, at 11.)  To the extent that Dr. Fumich's affidavit contradicts Adams's own deposition testimony regarding her limitations and the medical evidence that existed prior to SBC filing its motion

activities, the effects were only moderate and intermittent.  Indeed, according to her own deposition testimony, as of May 24, 2004 (the date of her last pain block treatment), she was able to return to work without any restrictions whatsoever.  (Adams Depo., at 158-59.)  She further stated that presently, she is able to sleep, walk, shop, care for herself, do laundry, and sit without any difficulties.  Id. at 178-80.[2]  Thus, the severity and long term impact of her alleged impairments were relatively minor and the duration was relatively short, approximately seven months.  Accordingly, Adams has not established that presently, she is a person with a disability within the meaning of the ADA.  See Mahon, 295 F.3d at 590-91 (citing Williams, 534 U.S. at 198); see also Roush v. Weastec, Inc., 96 F.3d 840, 844 (6th Cir. 1996) (concluding that because impairment was temporary, it is not substantially limiting and not a disability under the ADA).

Adams next argues that she was also discriminated against because she has a record of being disabled.  42 U.S.C. § 12102(2); Lloyd v. E. Cleveland City Sch. Dist., 232 F. Supp. 2d 806, 812 (N.D. Ohio 2002).  "Has a record of such impairment" means "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k).  This provision of the ADA serves to protect "people who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who remain vulnerable to the fears and stereotypes of their employers."  Equal Opportunity Empl.

---

for summary judgment, the court will not consider those portions of his affidavit.

[2]     Adams relies on her 12/07/05 affidavit and the 11/07/05 affidavit of Robert Fumich, M.D. to argue that she still suffers disabling effects from her physical and mental impairments.  (Doc. Nos. 38-2, 38-4.)  However, it is well-established that "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts [her] earlier deposition testimony."  Penny v. UPS, 128 F.3d 408, 415 (6th Cir. 1997).

Comm'n v. Daimler Chrysler Corp., 111 Fed. Appx. 394, 404 (6th Cir. Sept. 5, 2004) (quoting

Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 509 (7th Cir. 1998)).

To evaluate whether Adams has a record of being disabled, the court will focus on the

records that were available at the time SBC terminated her employment.  See Heilweil v. Mount

Sinai Hosp., 32 F.3d 718, 725 (2d Cir. 1994) (citing Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d

1178, 1181 (6th Cir. 1993)).

The relevant records at issue are attached to Adams's STD appeal.  (Doc. No. 38-3.)  With

regard to her physical impairment, Adams stated that her "current conditions do not allow me to sit,

stand, or move in any way to perform my duties at SBC."  Id. at 3.  Also, Dr. Fumich stated that

Adams "is currently unable to return to work due to a herniated disc."  Id. at 9.  However, an ADA

claimant must focus on the effect of an impairment *on her daily life*, not its effect on her ability to

perform a specific job.  Williams, 534 U.S. at 200-01.  Thus, these statements are insufficient to

establish a record of being disabled.[3]  Id.  With regard to her mental impairment, Adams submitted

a letter from R. Taylor Segraves, M.D., which simply states that she suffers from anxiety and

depressive symptoms, "both of which are associated with poor concentration [and] interfere with

her ability to work productively."  (Doc. No. 38-3, at 20.)  This statement is equally insufficient to

establish a record of being disabled because it does not indicate that Adams suffered from an

impairment that substantially limits her ability to work, especially in comparison to the average

person in the general population.  See 29 C.F.R. § 1630.2(j)(1).  Moreover, "concentrating" is not

---

[3]     To the extent that these records indicate that Adams is unable to perform work of
         any kind, Dr. Fumich indicated that her physical impairment was only temporary
         and expected to last until May 24, 2004.  (Doc. No. 38-3, at 11.)  Again, an
         impairment that "only moderately or intermittently prevents an individual from
         performing major life activities is not a substantial limitation under the Act."
         Mahon, 295 F.3d at 590-91 (citing Williams, 534 U.S. at 198).

a major life activity.  <u>Linser v. Ohio Dep't of Mental Health</u>, 2000 U.S. App. LEXIS 25644, *9 (6th Cir. Oct. 06, 2000).

Because Adams has not set forth evidence establishing that she is either a person with a disability or having a record of a disability, the motion for summary judgment, with respect to Counts One and Three, is granted.

**B.    Race Discrimination Claim**

Although Counts Two and Four initially raised race and gender discrimination claims, Adams only attempts to set forth evidence establishing discrimination based on race in her brief in opposition.  To prevail in a race discrimination claim under Title VII and O.R.C. § 4112, a plaintiff must present either direct evidence of discrimination or evidence sufficient to make out a prima facie case.  <u>Williams v. Ford Motor Co.</u>, 187 F.3d 533, 538 (6th Cir. 1999).  To establish a prima facie case of race discrimination, a plaintiff must establish that (1) he or she is a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) that similarly situated non-protected employees were treated more favorably.  <u>Tally v. Bravo Pitino Restaurant</u>, 61 F.3d 1241, 1246 (6th Cir. 1995); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  <u>Anthony v. BTR Auto. Sealing Sys.</u>, 339 F.3d 506, 515 (6th Cir. 2003).  The burden then shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination.  Id.

SBC only takes issue with the fourth element: whether Adams has established that similarly-situated non-protected employees were treated more favorably.  To make such a showing, the comparables must be similar in all relevant respects.  <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 583

-10-

(6th Cir. 1992)(citation omitted).  Thus, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Id.  However, these factors are not exclusive and the Sixth Circuit has instructed district courts to "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998).

Here, Adams seeks to compare herself to four separate white employees who were granted leaves of absence for various medical conditions.  Adams filed a claim for back and neck pain, which was initially denied because Dr. Alghazawai's notes were incomplete and illegible.  (Azriel Depo. Ex. C, at 01013; 01004-07.)  On appeal, an independent physician concluded that although she suffered from a L5 nerve denervation, her MRI was normal, her physical therapy records indicated some functionality, and her EMG did not indicate any acute pathology.  (Adams Depo. Ex. 21.)  An independent psychiatrist concluded that although her doctor found her concentration to be problematic, there was no mental status data that would substantiate problems with memory, cognition, or concentration to any serious extent and her treatment notes indicate that she demonstrated sustained concentration.  Id.  Thus, her appeal was denied.

In comparison, although Employee No. 2[4] suffered from "severe back pain" resulting from "disc damage," leave was granted after he submitted medical documentation regarding a prior back

---

[4]     To protect the identity of the employees, the parties have agreed to refer to them as No. 1, No. 2, No. 3, No. 4, and No.5.  Because Employee No. 1 is a black male, he is irrelevant to her claim of race discrimination.

surgery, a slipped disc causing excruciating pain, and a potential need for future surgery.  (Reinhart Decl. Ex. B, at 03304; 03307; 3299-3300; 3290; 3272.)  Leave was eventually terminated after an unsuccessful appeal, and he returned to work.  Id. at 3261; 3251; 3249.  Employee No. 3 suffered from injuries related to knee surgery (which was work-related), back surgery, and a subsequent hysterectomy.  (Reinhart Decl. Ex. C, at 02609-10; 02362; 2576; 2569.)  Leave was granted for her back pain after she submitted medical documentation indicating that she still had a bulging disc after two back surgeries and had a staff infection that needed to be drained and treated.  Id. at 02454; 02446-48.  Employee No. 4 filed a claim for "whiplash/cervical sprain" resulting from a car accident.  (Reinhart Decl. Ex. D, at 02855.)  He submitted medical evidence indicating that he could not move his neck, that he suffered from a cervical spasm, and that his medicine caused drowsiness, impacting his ability to work.  Id. at 02852-53.  Leave was eventually terminated early and he returned to work.  Id. at 02831; 02836-37.  Finally, Employee No. 5 filed several claims related to her knees, including injuries resulting from a fall at work, an ACL tear, and several subsequent surgeries.  (Reinhart Decl. Ex. E, at 130; 103; 87; 62; 27; 5.)  She submitted medical evidence indicating, inter alia, that she had no cartilage in her knees and ended up having a total knee replacement prior to returning to work.  Id. at 103; 5; 2.  Although the court maintains that these employees are not similarly-situated because their injuries were far more severe, more thoroughly-documented, and handled by at least three different SBC attendance managers, it will nonetheless give Adams the benefit of the doubt that she has set forth a prima facie case of discrimination and proceed to the remaining McDonnell Douglas analysis.

Once established, the prima facie case creates a rebuttable presumption requiring the defendant to provide some legitimate, non-discriminatory reason for his conduct. Anthony, 339 F.3d

-12-

at 515.  The defendant's burden is one of production, not persuasion.  <u>Gray v. Toshiba Am.</u> <u>Consumer Prods.</u>, 263 F.3d 595, 599 (6th Cir. 2001).  Here, SBC alleges that it terminated Adams's employment because she refused to return to work after her STD claim was denied, initially because her medical documentation was illegible and incomplete, and on appeal because two independent physicians concluded that the evidence did not support a finding of disability.

The ultimate burden of persuasion rests with Adams to establish that this legitimate, non-discriminatory reason is pretextual.  <u>Anthony</u>, 399 F.3d at 515.  In doing so, she must establish that this reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct.  <u>See</u> <u>Carter v. Univer. of Toledo</u>, 349 F.3d 269, 274 (6th Cir. 2003)(citation omitted).  Showing pretext by the first and third methods permits an inference of illegal discrimination.  <u>Manzer v. Diamond Shamrock Chems. Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).  Showing pretext by the second method requires the plaintiff to introduce additional evidence of discrimination.  <u>Id.</u>

Here, Adams does not argue that the proffered reason has no basis in fact, nor could she, since the deficiencies in her STD claim, in comparison to her fellow employees, are well-documented in the record and it is undisputed that she did not return to work after her claim was denied.  She also does not argue that the proffered reason is insufficient to explain the challenged conduct.  Instead, Adams maintains that the proffered reason did not actually motivate the challenged conduct and that SBC was really motivated by her race.  However, she has not introduced any additional evidence of discrimination in support this assertion, as required in the Sixth Circuit.  <u>See</u> <u>Manzer</u>, 29 F.3d at 1084.  She does cite to Phyllis Azriel's deposition as evidence that her STD claim was denied on the same day SMAART inquired into her workplace performance.

-13-

The court does not see how this fact is particularly relevant.  Azriel stated in her deposition that it is common for SMAART to look at an employee's workplace performance and disciplinary record when evaluating an STD claim.  (Azriel Depo., at 38-40.)  Moreover, assuming arguendo that SMART did, in fact, deny her STD claim because of her poor attendance record, this fact does not establish that the decision was based upon her race.

In short, SMAART utilized the same criteria to evaluate each of the aforementioned STD claims.  It denied Adams's claim because the medical evidence she submitted was simply insufficient to establish that she was suffering from a disability.  SBC then terminated her employment because she refused to return to work.  Adams has not set forth any evidence from which a reasonable jury could conclude that SBC's decision was based upon her race.  The motion for summary judgment, with respect to Counts Two and Four, is granted.

**C.    IIED Claim**

Finally, Count Five raises an IIED claim, though it is unclear whether Adams is still pursuing this claim since she never mentions it in her brief in opposition.  Nonetheless, to establish such a claim under Ohio law, a plaintiff must show that (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused the plaintiff's psychic injury; and (4) the mental anguish that the plaintiff suffered was serious.  Hanley v. Riverside Methodist Hosp., 78 Ohio App. 3d 73, 82 (10th App Dist. 1991); see also Yeager v. Local Union 20, Teamsters, 6 Ohio St. 3d 369, 374 (1983).  The Ohio Supreme Court has cautioned that the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

-14-

intolerable in a civilized community." <u>Yeager</u>, 60 Ohio St. 3d at 75 (citation omitted).

Here, the only extreme and outrageous conduct Adams alleges is that she was allegedly discriminated against by her employer.  However, such conduct, absent additional allegations, is insufficient to establish extreme and outrageous conduct.  Otherwise, as the Sixth Circuit recognized, all discrimination claims would simultaneously become IIED claims.  <u>Godfredson v. Hess & Clark, Inc.</u>, 173 F.3d 365, 376 (6th Cir. 1999).  Ohio courts simply require more.  <u>Id.</u> Morever, outside of the cursory allegation that SBC's actions caused her "to suffer severe emotional distress and other damages and injuries," Adams has not set forth any evidence to support this claim. The motion for summary judgment, with respect to Count Five, is granted.

## IV.  CONCLUSION

For the foregoing reasons, SBC's motion for summary judgment (Doc. No. 22-2) is granted. The case is hereby dismissed, with prejudice, each party to bear its own costs.

This order is final and appealable.

IT IS SO ORDERED.

            /s/ Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated:  October 13, 2006